GUY A. THOMPSON, TRUSTEE, INTERNATIONAL GREAT
NORTHERN RAILROAD COMPANY, DEBTOR, V.
R. E. JANES ET AL.

No. A-3567. Decided October 8, 1952.
Rehearing overruled November 12, 1952.
(251 S. W., 2d Series, 953.)

*Tyler & Tyler, David Tisinger and Hardy Hollers,* all of Austin, for petitioners.

The Court of Civil Appeals erred in sustaining the action of the trial court in refusing to permit petitioner to file trial amendments; to take a non-suit and dismiss its suit as to part of the land. Leonard v. Small, 28 S.W. 2d 826; Board of Regents of State Teachers College v. Kelley, 208 S.W. 2d 565; Houston North Shore Ry. Co. v. Tyrrell, 128 Texas 248, 98 S.W. 2d 786.

*Polk Shelton, White, Taylor & Chandler, Q. C. Taylor, H. Grady Chandler* and *Kerns B. Taylor,* all of Austin, for respondents.

Petitioner could not dismiss as to a part of the land unless it offered to return that portion to respondents, after having taken possession of same and made improvements thereon. Houston & T.C.Ry.Co. v. Postal Telegraph Cable Co., 45 S.W. 179; Roberts v. Robertson County, 48 S.W.2d 737; Brazos River Conservation & Rec Dist., v. Allen, 141 Texas 208, 171 S.W. 2d 842.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

On July 29, 1948, petitioner in his capacity as trustee of the International-Great Northern Railroad Company, filed suit against R. E. Janes and R. E. Janes Gravel Company, Inc., to condemn for a depot site and other related purposes approximately four acres of land in two adjacent tracts situated in the city of Austin. Tract No. 1 contains about three and one-half acres and tract No. 2 about one-half acre. Respondents were unwilling to accept the award of the Commissioners appointed to assess the damages and appealed to the County Court of Travis County. Petitioner appealed from that court's judgment and the case was reversed and remanded by the Court of Civil Appeals. 227 S. W. 2d 330. The judgment rendered by the county court on the second trial, awarding damages of approximately $30,-000.00, was affirmed by the Court of Civil Appeals. 245 S. W. 2d 718. The latter judgment is before us for review.

On August 10, 1948, the date set for the first hearing by the Commissioners, an order was entered postponing the hearing to September 9, 1948, and reciting that the parties had entered into an agreement (copied in the opinion of the Court of Civil Appeals) which provided that petitioner should take immediate possession of the land sought to be condemned, subject only to the rights of respondents to go upon the land for certain speci-

fied purposes until August 21, 1948; and that the land would be valued in all subsequent proceedings as of August 10, 1948. Under that agreement petitioner took possession of the land, erected a depot and other valuable improvements thereon, and is still in possession of the property, using the improvements for carrying on the business of the railroad.

On the second trial of the case in 1951, petitioner presented to the trial court consecutive motions for permission to file first and second trial amendments and a supplemental petition in which he sought to dismiss from the suit all of tract No. 2 and all but .557 acres of tract No. 1. The principal question before us is whether or not the county court erred in overruling these motions, thereby denying petitioner the right to file the trial amendments and supplemental petition.

To support his claim of a right to dismiss as to all of the land except approximately one-half acre, petitioner alleged: (a) that it had been ascertained since the filing of the suit that respondent did not own tract No. 2, and that the City of Austin by ordinance of January 6, 1949, had granted petitioner the right to use that tract; (b) that in spite of due diligence petitioner had discovered since the filing of the suit that respondents did not own approximately three acres in the south part of tract No. 1; and (c) that the parties were mutually mistaken as to the ownership of that portion of tract No. 1 or, in the alternative, if the parties were not mutually mistaken, that respondent Janes had knowledge of his lack of title, and his failure to admit lack of title was a constructive fraud.

Petitioner in his original petition admitted that respondents "owned, held and claimed" all the land sought to be condemned, but in his trial amendments disputed respondents' title to all but approximately one-half acre. In resisting the motions to file those trial amendments respondents asserted their ownership of the entire four acres, thus raising an issue of title in a court without jurisdiction to try such a dispute. Articles 1906, 1951, Vernon's Ann. Civ. Stats. Petitioner concedes that the county court cannot try title to land, but argues that any issue of title could have been avoided by permitting him to dismiss as to all lands which he claimed were not the property of respondents, and relegating respondents to their right to bring an original suit in the district court to recover title, together with damages for detention by petitioner. Two observations may be made concerning the procedure suggested by petitioner.

(1) The agreement by which petitioner took possession of the land, provided that respondents waived their rights to damages for detention. (2) Suppose that petitioner had been granted leave to amend and had condemned and paid for only one-half acre of land, and that in a subsequent suit in the district court respondents had established title to all the four acres or to a portion thereof in excess of one-half acre. Petitioner would then have been in the position of having taken respondents' land under its power of eminent domain without having compensated them for it.

1 That brings us to a consideration of the basic question of the right of petitioner to dismiss, as he sought to do by the trial amendments tendered for filing. If he had the right to dismiss under the facts of this case, then the question of what cause of action, if any, would have remained in respondents is immaterial. There is no doubt that a condemnor who has not taken possession of the land sought to be condemned has the right to dismiss the suit if the project is to be abandoned or the location changed, for an agency clothed with the power of eminent domain may not be forced to take land against its will. Leonard v. Small, 28 S. W. 2d 826, error refused. Likewise, the condemning agency is accorded the right to dismiss as to a portion of the land when it decides that its purpose may be accomplished with less land than was initially sought. Texas & N. O. R. Co. v. Postal Telegraph Cable Co., 52 S. W. 108.

2 In this case, however, petitioner acquired possession of the four acres at the outset of the suit under an agreement with respondents and has not offered to return possession to them of that portion sought to be dismissed. The Court of Civil Appeals recognized that the right of dismissal should not be exercised to the prejudice of the condemnee, a principle expressed in Brazos River Conservation & Reclamation District v. Allen, 141 Texas 208, 171 S. W. 2d 842; and held that, as a condition precedent to petitioner's right of dismissal, he must restore the status quo by surrendering to respondents possession of the land sought to be dismissed. That holding is supported by authority and we approve it. Witt v. St. Paul & N. P. R. Co., 35 Minn. 404, 29 N. W. 161; Bellingham Bay & B. C. R. Co. v. Strand, 14 Wash. 144, 44 Pac. 140; United States v. Portion of West Reservoir in Harris County, Texas, 57 F. Supp. 367. Had petitioner been granted leave to file his trial amendments and supplemental petition, respondents would neither have regained possession of the land which they relinquished to peti-

tioner nor have received compensation therefor. Petitioner's argument that they could have brought a suit in the district court for trespass and damages to the land is no answer to the claim of respondents that they would have been prejudiced by the filing of the amendments and supplemental petition.

One paragraph of the agreement of August 10, 1948, reads as follows:

"Provided that, and it is agreed by both parties, that none of the parties have waived any rights asserted in this proceeding or any rights under law except as is herein otherwise stated, and except it is further expressly agreed that the railroad shall suffer no liability for trespass or unlawful entry by reason of the taking possession, the taking of such possession being hereby expressly consented to by R. E. Janes and R. E. Janes Gravel Company, Inc."

Petitioner contends that he was relieved of the obligation to surrender possession by the provision above that neither party "waived * * * any rights under law"; that under this agreement the railroad did not waive its right to dismiss any part of its cause of action upon ascertaining to its satisfaction that respondents owned no interest in the property sought to be dismissed from the proceedings. This argument presupposes the right to dismiss, when the existence of that right is the very question at hand. If petitioner had the legal right to dismiss without surrendering possession, the language above quoted neither added to nor detracted from that right. What we hold is that he did not have that right.

3  Petitioner contends that respondents could not be prejudiced by petitioner's failure to restore to them possession of land in which their only interest was a mere naked possession or right of occupancy. A mere naked possession of land is not ordinarily a right of very great value, but the fallacy in petitioner's argument is that it is based on the unwarranted assumption that respondents have no title to the land. Whether or not they do have title to it is a question which the trial court had no jurisdiction to decide and, therefore, no jurisdiction to assume against respondents.

4  A railroad cannot take fee title to land in condemnation proceedings. Rev. Stats., Art. 6339. Special issues were submitted to the jury inquiring as to the reasonable market value of each of the two tracts of land. Judgment was rendered for

the sum of those findings. No issue was submitted calling for a finding of the value of an easement in the land for railroad purposes. Petitioner timely objected to the special issues submitted by the court and to the refusal of the court to instruct the jury that the term "market value," as used in the special issues, referred to the market value of an easement for railroad purposes as described in the petition.

In some cases the measure of damages for the taking of an easement by condemnation proceedings is the difference in the market value of the land free of the easement and its market value burdened with the easement. Gulf Coast Irrigation Co. v. Gary, 118 Texas 469, 14 S. W. 2d 266, rehearing denied, 118 Texas 480, 17 S. W. 2d 774. If the easement leaves the landowner with some beneficial use of the land, as it does, for instance, in the case of easements for pipe lines, power lines, or other similar purposes, then the damages for the condemnation thereof, as a matter of law, will be less than the value of the fee. Texas Pipe Line Co. v. Hunt, 149 Texas 33, 228 S. W. 2d 151. A distinction must be drawn, however, between such easements and easements which deprive the landowner of any beneficial use of the land. In the latter class of easements the landowner may recover as damages the market value of the land. 18 Amer. Jur., Eminent Domain, § 251; Nichols on Eminent Doman, 3d ed., Vol. 4, § 12.41 (2) ; 29 C. J. S., Eminent Doman, § 143; Southern Pac. R. Co. v. San Francisco Saving Union., 146 Cal. 290, 79 Pac. 961, 70 L. R. A. 221; Brown v. Title Guaranty & Surety Co., 232 Pa. 337, 81 Alt. 410, 38 L. R. A. N. S. 698; Kentucky-Tennessee Light & Power Co. v. Beard, 152 Tenn. 348, 277 S. W. 889. The rule is stated clearly in American Jurisprudence, supra:

"While it is no doubt true that ordinarily a city or town or a railroad company in acquiring land for a highway or railroad is entitled to acquire by condemnation proceedings only an easement over the land, and that the fee thereof remains in the owner, yet in most condemnation cases for highways or railroads this distinction, as far as it enters into a determination of the damages to be assessed for the right of way acquired thereby, has no practical application. Usually in such cases there is no substantial difference in value between the easement and the fee, of which the law will take notice. Hence, in ordinary cases, where condemnation for a right of way is sought, evidence is permitted to show, as the damages sustained, the full value of the land taken, upon the theory that the easement will be perpetual; that the right of way acquired,

though technically an easement, will be permanent in its nature, and the possibility of abandonment by nonuser so remote and improbable as not to be taken into consideration; that the exercise of the right will require practically the exclusive use of the surface; and that any interest which might be reserved to the owner in the fee would only be a nominal one and of no value. In such circumstances, as there can be no substantial determinative value in the fee apart from the easement, the law will not consider them separately, but will require the condemning corporation to pay the value of the fee as the measure of the damages sustained."

Nichols on Eminent Domain, supra, in a footnote to the text, states that "this principle is so well established that it is generally assumed without discussion."

We need not determine whether or not in all cases the condemnation of land for a highway or a railroad leaves the condemnee with no beneficial use of the land, but in this case there is no evidence that any beneficial use was left in the condemnee. Respondents introduced evidence to the effect that the value of the easement was equal to the value of the fee. Petitioner points us to no evidence to the contrary, except a statement by a witness that "The easement has less value than the whole fee of title where a man holds the entire title to it." That evidence furnishes no guide by which the jury could have determined the difference in value, if any, between the fee and the easement. It is our conclusion that petitioner was not prejudiced by the manner in which the issues of damages were submitted, and his assignments complaining thereof are overruled.

Other points are brought forward in the application for writ of error, but in our opinion all have been correctly disposed of by the Court of Civil Appeals, and no reason appears for further writing on them. The case is affirmed.

Opinion delivered October 8, 1952.

Rehearing overruled November 12, 1952.