McClain v. Elm Creek 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-95-00335-CV







John T. McClain and Cindy R. McClain Matl, Appellants



v.



Elm Creek Watershed Authority, Appellee







FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY


NO. 31,661, HONORABLE EDWARD S. JOHNSON, JUDGE PRESIDING







 This is a condemnation suit in which appellee Elm Creek Watershed Authority
("condemnor") filed suit to condemn an easement on property located in Bell County owned by
appellants John T. McClain and Cindy R. McClain Matl. Following a jury trial, the court granted
the easement, but denied the landowners any compensation. We will reverse the judgment below
and remand the cause to the trial court.



THE CONTROVERSY


 Appellants own a 96 acre tract of land in Bell County. The condemnor, a
government agency possessing statutory powers of eminent domain, seeks to build a dam and
create a water reservoir on Cottonwood Creek for flood control. This project requires
condemning an easement on 44.6 acres of appellants' property, permitting the condemnor to
construct, operate, and maintain a flood control structure within the easement area. A large part
of the easement will be permanently submerged while the water will at times rise to flood the rest of the area depending upon rainfall and flood control practices. Appellants will retain the fee
interest and any beneficial use of the easement area which is feasible for such purposes as grazing
and recreation, so long as they do not infringe upon the condemnor's efforts at flood control.

 The parties stipulated that the size of the easement was 44.6 acres and that the pre-taking value of the condemned land was $810 per acre, resulting in a stipulated market value
before taking of $36,126. At trial, appellants waived any claim to damages for the remainder
property not subject to the easement. Appellants sought compensation solely for the diminution
in value of the property subject to the easement, considered as severed land. 

 The jury charge consisted of one question: "What was the value of the 44.6 acres
of land subject to the easement immediately after the taking, considered as severed land?" The
jury answered, "$40,000." On the basis of this verdict, the court rendered judgment vesting the
condemnor with the easement, but denying appellants any compensation.



APPLICABLE LAW AND STANDARD OF REVIEW


 When, as in the instant cause, a condemnor takes only a portion of a landowner's
property, the landowner is entitled to compensation in the amount of the market value of the part
taken plus damage to the remainder caused by the condemnation. Westgate, Ltd. v. State, 843
S.W.2d 448, 456 (Tex. 1992). Moreover, the landowner is entitled to at least the market value
of the part taken, even if the condemnation actually increases the value of the remainder. Id. 
When the condemnor takes only an easement in the property, the landowner is entitled to
compensation in the amount of the difference in market value of the part taken free of the
easement and its market value burdened by the easement. If the easement leaves the landowner
with some beneficial use of the property taken, then, as a matter of law, the damages will be less
than the value of the fee. See Thompson v. Janes, 251 S.W.2d 953, 955-56 (Tex. 1952). 

 In point of error one, appellants argue that the trial court improperly rendered
judgment entitling the condemnor to take their land without paying any compensation. In point
of error two, appellants contend that there was legally and/or factually insufficient evidence to
support the jury's finding that the condemned parcel, considered as severed land, had a post-taking value of $40,000. 

 In deciding a legal sufficiency point of error which attempts to overcome an adverse
finding as a matter of law, we must first consider only the evidence and inferences tending to
support the finding of the trier of fact and disregard all evidence and inferences to the contrary. 
Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert. denied, 111 S. Ct. 135
(1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965); see generally William Powers, Jr.
& Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence," 69 Tex. L. Rev. 515
(1991); Michol O'Connor, Appealing Jury Findings, 12 Hous. L. Rev. (1974). When reviewing
a jury finding to determine the factual sufficiency of the evidence, we must consider and weigh
all the evidence and should set aside the judgment only if it is so contrary to the overwhelming
weight of the evidence as to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176
(Tex. 1986); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor
Co., 715 S.W.2d 629, 635 (Tex. 1986); see generally Powers & Ratliff, supra; O'Connor, supra. 
Should we sustain a factual sufficiency point of error, we must remand the cause to the trial court
for a new trial. Wrightway Spraying Serv. v. Butler, 690 S.W.2d 897, 898 (Tex. 1985).



DISCUSSION


 In the instant cause, appellants abandoned their claim to compensation on the
remainder property. Therefore, the only issue in dispute was the value of the part taken. In such
"partial-taking cases," the Texas Supreme Court recommends submitting a special issue, asking
the jury the market value of the part taken, considered as severed land. Westgate, 843 S.W.2d
at 456. The trial court submitted such a question in the instant cause. However, this cause
further presents a "double partial-taking case" because the condemnor seeks to take only a limited
property interest in a portion of appellants' property. Therefore, the proper measure of damages
is the market value of the 44.6 acre tract, considered as severed land, before the taking, minus
the value of the same tract, considered as severed land, after the taking. See Thompson, 251
S.W.2d at 955-56. 

 The parties stipulated that, before the easement was taken, the 44.6 acre tract had
a market value of $810 per acre, totalling $36,126. The jury found that, after the taking, the 44.6
acre tract, considered as severed land, had a value of $40,000. Because the jury found that the
value of the 44.6 acres, considered as severed land, would actually increase after being subjected
to the flood control easement, the trial court rendered judgment denying appellants any
compensation. 

 John Cook, the condemnor's appraiser, testified that the land had an average pre-taking value of $810 per acre and an average post-taking value of $1250 per acre, as averaged
over the entire 96 acre tract. Cook attributed the increased value to the fact that the lake itself
was valuable and the remainder would be enhanced by fronting on the lake. But under cross-examination, Cook conceded that he could not assign a specific monetary value to the 44.6 acres
subject to the easement considered as severed land. He had not separately determined its post-taking value and was unable to testify to its value on that basis. Nonetheless, he did testify that
the 44.6 acre tract had some value after the taking derived from possible sport and recreational
use. John McClain, on the other hand, testified that the 44.6 acre tract had no value after the
taking. According to appellants, Cook's testimony constitutes insufficient evidence to support the
judgment. Appellants argue that Cook's calculations of the 44.6 acre tract's post-taking value are
based on an average of the entire 96 acre tract in contravention of the partial-taking valuation rules
enunciated in Westgate.

 The condemnor responds that the record contains evidence that the 96 acre tract
of land had a post-taking average value of $1250 an acre, and that land is fungible. Therefore,
the jury was permitted to infer that the 44.6 acre tract by itself had a value of approximately
$1250 per acre. Indeed, before finally conceding that he could not assign a post-taking appraisal
value to the 44.6 acres as severed land, Cook originally testified that the 44.6 acres, presumably
as non-severed land, had a value of $1250 per acre, or $55,750 total. The jury found the severed
land, after taking, to be worth $40,000. In urging that the jury was entitled to infer that the
severed land had the same average per acre value as the enhanced remainder property, the
condemnor's theory is in direct conflict with Westgate.

 Westgate reasserts that, in a partial taking, "the landowner is in all cases entitled
to at least the market value of the part taken, even if the condemnation actually increases the value
of the remainder." Id. at 456. Westgate makes clear that the valuation of the taken and non-taken
parcels are independent inquiries.

 In the instant cause, the $1250 per acre figure was predicated upon the remainder's
enhanced value due to the easement on the subject property. To allow the $1250 per acre figure
to support any valuation of the 44.6 acre tract considered as severed land is to import the
enhanced remainder value into the equation and contravene the mandate of Westgate. Therefore,
Cook's testimony constitutes no evidence of a specific monetary value of the 44.6 acre tract
burdened by the easement, considered as severed land.

 Although Cook did not give testimony as to a specific monetary value of
the 44.6 acres as severed land, he did testify that the parcel had some unspecified value for
agricultural or recreational purposes. Therefore, because there is some evidence that the
landowners retained some beneficial use of the 44.6 acres after the taking, we cannot sustain a
point of error asserting that the land had no post-taking value. Nonetheless, appellants contend
that the evidence is factually insufficient to support the jury's verdict. We agree. Ignoring
Cook's calculations, there is no evidence as to a market value of the property burdened by the
easement. The only evidence in the record that indicates that the 44.6 acre tract has any post-taking value at all is Cook's inexact testimony that the tract has some value. Without any
evidence of market value, the $40,000 jury finding has little evidentiary foundation on which to
stand and is clearly wrong and unjust. We therefore hold that the evidence is factually insufficient
to support the jury's finding that the 44.6 acre tract, considered as severed land, had a post-taking
value of $40,000.

 In point of error three, appellants claim that the court erred in refusing to grant
judgment awarding them $36,126. According to appellants, the evidence conclusively established
that the 44.6 acre tract, considered as severed land, had a post-taking value of zero. Therefore,
appellants argue the court should have rendered judgment awarding them $36,126, the stipulated
pre-taking value of the 44.6 acre tract, considered as severed land. The evidence, however, does
not conclusively establish that the land had zero value. McClain testified that the land had zero
value, but Cook testified that the land had some market value. The trier of fact was free to choose
Cook's testimony over McClain's. The evidence indicates that the landowners would retain some
beneficial use in the easement property regardless of whether it would be of a nature they might
choose to exercise. We overrule point of error three.



CONCLUSION


 We hold that the evidence was factually insufficient to support the jury's finding
that the condemned 44.6 acre tract of land, considered as severed land, had a post-taking value
of $40,000. Therefore, the court erred in rendering judgment condemning the parcel without
awarding appellants any compensation. We reverse the judgment below and remand the cause to
the trial court.



 

 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and Kidd

Reversed and Remanded

Filed: June 26, 1996

Publish



ndeed, before finally conceding that he could not assign a post-taking appraisal
value to the 44.6 acres as severed land, Cook originally testified that the 44.6 acres, presumably
as non-severed land, had a value of $1250 per acre, or $55,750 total. The jury found the severed
land, after taking, to be worth $40,000. In urging that the jury was entitled to infer that the
severed land had the same average per acre value as the enhanced remainder property, the
condemnor's theory is in direct conflict with Westgate.

 Westgate reasserts that, in a partial taking, "the landowner is in all cases entitled
to at least the market value of the part taken, even if the condemnation actually increases the value
of the remainder." Id. at 456. Westgate makes clear that the valuation of the taken and non-taken
parcels are independent inquiries.

 In the instant cause, the $1250 per acre figure was predicated upon the remainder's
enhanced value due to the easement on the subject property. To allow the $1250 per acre figure
to support any valuation of the 44.6 acre tract considered as severed land is to import the
enhanced remainder value into the equation and contravene the mandate of Westgate. Therefore,
Cook's testimony constitutes no evidence of a specific monetary value of the 44.6 acre tract
burdened by the easement, considered as severed land.

 Although Cook did not give testimony as to a specific monetary value of
the 44.6 acres as severed land, he did testify that the parcel had some unspecified value for
agricultural or recreational purposes. Therefore, because there is some evidence that the
landowners retained some beneficial use of the 44.6 acres after the taking, we cannot sustain a
point of error asserting that the land had no post-taking value. Nonetheless, appellants contend
that the evidence is factually insufficient to support the jury's verdict. We agree. Ignoring
Cook's calculations, there is no evidence as to a market value of the property burdened by the
easement. The only evidence in the record that indicates that the 44.6 acre tract has any post-taking value at all is Cook's inexact testimony that the tract has some value. Without any
evidence of market value, the $40,000 jury finding has little evidentiary foundation on which to
stand and is clearly wrong and unjust. We therefore hold that the evidence is factually insufficient
to support the jury's finding that the 44.6 acre tract, considered as severed land, had a post-taking
value of $40,000.

 In point of error three, appellants claim that the court erred in refusing to grant
judgment awarding them $36,126. According to appellants, the evidence conclusively established
that the 44.6 acre tract, considered as severed land, had a post-taking value of zero. Therefore,
appellants argue the court should have rendered judgment awarding them $36,126, the stipulated
pre-taking value of the 44.6 acre tract, considered as severed land. The evidence, however, does
not conclusively establish that the land had zero value. McClain testified that the land had zero
value, but Cook testified that the land had some market value. The trier of fact was free to choose
Cook's testimony over McClain's. The evidence indicates that the landowners would retain some
beneficial use in the easement property regardless of whether it would be of a nature they might
choose to exercise. We overrule point of error three.



CONCLUSION


 We hold that the evidence was factually insufficient to support the jury's finding
that the condemned 44.6 acre tract of land, considered as severed land, had a post-taking value
of $40,000. Therefore, the court erred in rendering judgment condemning the parcel without
awarding appellants any compensation. We reverse the judgment below and remand the cause to
the trial court.