Dismissed and Memorandum Opinion filed September 8, 2005









Dismissed and Memorandum Opinion filed September 8,
2005.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00500-CV

 

______________________

 

ALI YAZDCHI, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 



 

On Appeal from the 61st
District Court

Harris County, Texas

Trial Court Cause No. 04-02083

 



 

M E M O R A N D U M   O P I N I O N

Appellant, Ali Yazdchi, appeals the trial
court=s dismissal of his
suit for lack of jurisdiction. 
Specifically, appellant complains the court erred in granting the State=s plea to the
jurisdiction because: (1) the State consented to suit by originally filing suit
against him; (2) alternatively, consent is not required because his claim is
not one for damages against the State; and (3) consent is not required because
his claim is ultimately a Atakings@ claim under the
Texas Constitution.  We dismiss the
appeal for want of jurisdiction.








Factual
and Procedural Background

It appears from
the record that appellant and numerous members of his family coordinated a
large consumer fraud scheme whereby they sold automobiles with tampered
odometer readings and/or falsified vehicle histories for vehicles that were
previously damaged, flooded, wrecked, or stolen.  As a result of appellant=s fraudulent
activities, the State confiscated and/or froze all of appellant=s property and
assets.  Subsequently, the State, through
the Texas Attorney General Consumer Protection Division, filed suit against him
in the 61st District Court of Harris County, Texas, in cause number
1999-57020.  








On April 14, 2000, appellant and the State
entered into an agreed judgment and permanent injunction in the case.  The twelve-page judgment provided explicit
instructions that appellant refrain from any activity involving the purchase or
sale of any motor vehicle. The judgment also ordered the appointment of a receiver
to manage the collection of appellant=s assets and
finances, and further detailed the actions that were to be taken by the State
to reimburse defrauded consumers. 
Specifically, the judgment ordered the following disbursement of
appellant=s property: (1) $650,000, title to a 1997
Lexus automobile, and keys to a condominium to appellant as his personal
property; (2) $111,500 and title to a Honda automobile to appellant=s ex-wife as her
personal property; (3) $100,000 to a Permanent Receiver=s Attorney Trust
Account to cover costs of the receiver=s fees, with any
remainder going to the State to cover its attorneys fees; (4) $280,000 directly
to the State for reimbursement of attorneys fees, investigative costs, and
other expenses incurred by the State; (5) $25,000 to the State as a civil fine
against appellant; (6) all remaining sums of money to the State to distribute
as restitution to defrauded consumers, with the State having Afull discretion@ to distribute the
money as long as it obtains releases from the victims in favor of appellant;[1]
and (7) all motor vehicles owned by appellant to be sold and the proceeds to be
given to the State to distribute to defrauded consumers as the State sees fit.[2]

Four years after entering into the agreed
judgment, appellant returned to the 61st District Court and filed
suit against the State in cause number 2004-02083.  Specifically, appellant sought to: (1)
enforce the terms of the agreed judgment; (2) obtain an accounting of monies
received and distributed by the State; (3) inspect any releases obtained by the
State; and (4) determine the property rights of any excess funds remaining
after full distribution to consumers. 
The State filed a plea to the jurisdiction claiming sovereign immunity.  The court held a hearing on the issue on May
7, 2004, and after reviewing the agreed judgment in cause number 1999-57020,
granted the State=s plea to the jurisdiction.  Accordingly, the court dismissed appellant=s suit.  

Plea
to the Jurisdiction








In Texas,
sovereign immunity deprives a trial court of subject matter jurisdiction for
lawsuits in which the state or certain governmental units have been sued,
unless the state consents to suit.  Tex.
Dep=t of Transp. v. Jones, 8 S.W.3d 636,
638 (Tex. 1999).  In a suit against a
governmental entity, the plaintiff must affirmatively demonstrate the court=s jurisdiction by
alleging a valid waiver of immunity, and pleading facts showing that the trial
court has jurisdiction.  Tex. Dep=t of Parks &
Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  Where the jurisdictional facts are
lacking, the State can file a plea to the jurisdiction.  Id.; Jones, 8 S.W.3d at 637.
 A plea to the jurisdiction is a
dilatory plea, the purpose of which is to Adefeat a cause of
action without regard to whether the claims asserted have merit.@  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 554 (Tex. 2000).  The plea
ultimately challenges the trial court=s authority to
determine the subject matter of a pleaded cause of action.  City of Midland v. Sullivan, 33 S.W.3d
1, 6 (Tex. App.CEl Paso 2000, pet. dism=d w.o.j.); State
v. Benavides, 772 S.W.2d 271, 273 (Tex. App.CCorpus Christi
1989, writ denied).

Generally, in resolving issues raised by a
plea to the jurisdiction, courts are to look solely to the allegations in the
pleadings to determine if sufficient jurisdictional facts are alleged.  County of Cameron v. Brown, 80 S.W.3d
549, 555 (Tex. 2002).  However, when a
plea to the jurisdiction challenges the existence of jurisdictional facts,
implicating the merits of the plaintiff=s cause of action,
the trial court also reviews any relevant jurisdictional evidence.  Miranda, 133 S.W.3d at 227; Blue,
34 S.W.3d at 555.  In turn, we review a
trial court=s ruling on a plea to the jurisdiction
under a de novo standard because subject matter jurisdiction is a question of
law.  See Tex. Natural Res.
Conservation Comm=n v. IT‑Davy, 74 S.W.3d 849,
855 (Tex. 2002).

Here, appellant complains that the trial
court=s dismissal of his
suit was improper because sovereign immunity does not protect the State in this
case.  He argues that because his lawsuit
arises from or is incident to the prior case, cause number 1999-57020,
originally brought by the State, the State necessarily consented to be
sued.  Alternatively, appellant contends
the State has no pecuniary interest in the case and, therefore, sovereign
immunity does not apply because the case is not one against the State for money
damages.  More specifically, appellant
analogizes the State=s duty in this case to that of a trustee
and claims that because the State has no interest in the funds, he is not suing
the State for money damages in a manner that would implicate sovereign
immunity.  Finally, appellant argues that
because the judgment leaves him with a type of remainder interest in any
property not distributed to defrauded consumers, his lawsuit necessarily
involves a Atakings@ claim under the
Texas Constitution to which the State is not immune.








To the contrary, the State contends that
appellant may not maintain suit against it because the case involves
interpretation of and enforcement of the agreed judgment.[3]  Ultimately, the State claims this type of
suit is a breach of contract action which is limited by the its sovereign
immunity.  In addition, the State argues
that the case involves no Atakings@ claim because, by
consenting to the agreed judgment, appellant gave up any rights he otherwise
had to the property.  To support this
conclusion, the State explains that paragraph 3 of the judgment provides the
only property rights retained by appellant, i.e., $650,000, a Lexus automobile,
and keys to a condominium explicitly given to appellant as his personal
property.  All other property, the State
argues, is vested in the State to distribute at its discretion.

In ths case, the State=s plea to the
jurisdiction challenged the jurisdictional facts which  directly implicated the merits of appellant=s cause of
action.  See Miranda, 133 S.W.3d
at 227.  Namely, the State challenged
appellant=s right to assert the action on grounds
that he has no claim other than one for breach of contract.  In other words, whether or not the trial
court has jurisdiction is entirely predicated on whether or not appellant has
any property rights in the disputed property. 
This inherently requires us to examine the agreed judgment and enforce
the judgment accordingly.








An agreed judgment must be interpreted as
if it were a contract between the parties and the interpretation is,
accordingly, governed by the laws relating to contracts.  See Hutchings v. Bates, 406 S.W.2d
419, 420 (Tex. 1966) (holding a child support agreement is largely governed by
the rules relating to contracts); Wagner v. Warnasch, 295 S.W.2d 890,
893 (Tex. 1956) (holding a judgment by consent is contractual in nature); Biaza
v. Simon, 879 S.W.2d 349, 355 (Tex. App.CHouston [14th
Dist.] 1994, writ denied) (holding an agreed or consent judgment is governed by
the law of contracts); see also Pate v. Pate, 874 S.W.2d 186, 188 (Tex.
App.CHouston [14 Dist.]
1994, writ denied) (AAgreed judgments, once rendered, are
contracts between the parties that excuse error and operate to end all
controversy between the parties.@).  Moreover, the proper way to enforce an agreed
judgment such as the instant one is by a lawsuit in the nature of a contract
action.  Ex parte Jones, 163 Tex.
513, 358 S.W.2d 370, 375 (Tex. 1962). 
Therefore, by suing to enforce the agreed judgment from cause number
1999-57020, appellant is ultimately suing the State for failure to uphold its
agreement, viz., a breach of contract.[4]


It is well settled that sovereign immunity
protects the State from claims for breach of contract.  See, e.g., Travis County v.
Pelzel & Assocs., Inc., 77 S.W.3d 246, 248 (Tex. 2002)
(explaining that express legislative consent is required to show that immunity
from a breach of contract suit has been waived); Gen. Servs. Comm=n v. Little‑Tex
Insulation Co., 39 S.W.3d 591, 593 (Tex. 2001) (A[T]he State does
not waive its immunity from suit for breach of contract simply by entering into
a contract . . .@); Fed. Sign v. Tex. S. Univ., 951
S.W.2d 401, 408 (Tex. 1997) (holding that the act of contracting alone does not
waive the State=s immunity from suit and further
explaining that legislative consent is still required in order for a private
citizen to sue the State on a breach of contract claim).  Thus, because appellant=s suit ultimately
requires us to interpret the agreed judgment according to contract law
principles, his suit directly implicates the State=s immunity from
suit for breach of contract.  See
generally Ex parte Jones, 358 S.W.2d at 375 (explaining that the
proper way to enforce an agreed judgment is by a lawsuit in the nature of a
contract action); Pate, 874 S.W.2d at 188 (holding that agreed judgments
are Acontracts between
the parties that . . . operate to end all controversy between the parties@).  Therefore, the State is immune from appellant=s lawsuit as far
as it seeks to interpret and enforce the agreed judgment.[5]








Takings Claim

Finally,
appellant contends he may maintain suit against the State for an unlawful Ataking@of his
property.  It is true that sovereign
immunity does not bar claims brought under the Texas Constitution.  See Steele v. City of Houston, 603
S.W.2d 786, 791 (Tex. 1980); Texas Parks & Wildlife Dep=t v. Callaway, 971 S.W.2d 145,
149 (Tex. App.CAustin 1998, no pet.).  More specifically, sovereign immunity does
not bar an individual from suing under Article I, section 17 of the Texas
Constitution, which prohibits the taking, damaging, destruction, or application
of private property for public use without adequate compensation.  Steele, 603 S.W.2d at 791; see also
City of Beaumont v. Bouillion,  896
S.W.2d 143, 149 (Tex. 1995) (explaining that Article I, section 17 provides a
limited right to sue the State for compensation).  

Section 17
provides, in relevant part, ANo person=s property shall
be taken, damaged, or destroyed for or applied to public use without adequate
compensation being made, unless by consent of such person.@  Tex.
Const. art. I, ' 17 (emphasis added).  When a person agrees to give the State his
property or otherwise consents to the State=s action, no Ataking@ occurs and the
person is precluded from suing the State for compensation.[6]








Here, appellant voluntarily entered into
the agreed judgment in cause number 1999-57020. 
Under the terms of the judgment, he consented to give the State all
property and assets other than those specifically listed in paragraph 3.  In doing so, he waived his right to sue the
State for an unlawful taking.  See
Green Int=l, Inc., 877 S.W.2d 428, 434B36; Steck Co.,
236 S.W.2d at 869.  Therefore, appellant
has no Atakings@ claim to assert,
and the trial court did not err in granting the State=s plea to the
jurisdiction.[7]

Accordingly, we overrule appellant=s contentions and,
like the trial court, dismiss for want of jurisdiction.

 

 

/s/      J. Harvey Hudson

Justice

 

 

Judgment
rendered and Memorandum Opinion filed September 8, 2005.

Panel
consists of Justices Yates, Anderson, and Hudson.











[1]  Specifically, paragraph 8 of the
agreed judgment states, AALL remaining sums of money . . .
[should be] transferred to the [State] to be distributed as restitution to
injured consumers and business entities. . . .  The [State] shall have judgment against [appellant] in the amount of such remaining sums of
money.  [The State] shall have full
discretion to distribute restitution to
injured victims and business entities provided that they obtain a release from
said victims/entities in favor of [appellant].@  (emphasis added).





[2]   Paragraph 9 explained that the State is to Adistribute such proceeds to injured
consumers and business entities as [the State] sees fit.  [The State] is awarded judgment in the
amount of all the net proceeds from the sale of said vehicles.@





[3]  The State
filed no appellate brief.  Thus, in
ascertaining the State=s position, we have looked to the original pleadings
and the record of the oral hearing held on May 7, 2004.





[4]  In fact, both parties have conceded that
interpretation of and enforcement of an agreed judgment directly implicate the
law regarding breach of contract.  Significantly, appellant states in various pleadings AThe State and [appellant] agree on one major
point.  An Agreed Judgment is to
construed [sic] under the principles of contract law.  The State and [appellant] obviously
disagree over the construction of the Agreed Judgment.@ (Emphasis added.) 
Thus, appellant=s dispute is essentially one involving interpretation
of and enforcement of the agreed judgment as in a dispute involving breach of
contract.





[5]  In addition, we
are not persuaded by appellant=s argument that the State consented to his lawsuit
simply because it originally filed an action against him in cause number
1999-57020.  Appellant cites two cases
for the proposition that once the State sues an individual, that person can, in
turn, sue the State for any and all claims which arise from or are incident to
the State=s original lawsuit. 
See State v. Brunson, 461 S.W.2d 681, 684 (Tex. Civ. App.CCorpus Christi 1970, writ ref=d n.r.e.); Trinity River Auth. v. Badders, 453
S.W.2d 304, 308B09 (Tex. Civ. App.CHouston
[14th Dist.] 1970, no writ).  However,
these cases are distinguishable.  

First, Brunson and Badders
each involved a condemnation action by the State that directly involved the
parties= constitutional rights under Article I, section 17 of
the Texas Constitution.  Therefore, in
both cases, the State could not escape liability by claiming sovereign
immunity.  See Brunson, 461 S.W.2d
at 683B84; Badders, 453 S.W.2d at 308B09.  Second, the parties never agreed to give their
personal property to the  State and were
seeking payment as just compensation for the Ataking@Cnot enforcement of an agreement with the State.  The courts in both cases explained that the
parties= lawsuits were so intertwined with the State=s original lawsuits, they necessarily arose from and
were a part of the same controversy.  See
Brunson, 461 S.W.2d at 683B84; Badders, 453 S.W.2d at 308B09. 
Accordingly, the courts held that sovereign immunity did not protect the
State from the lawsuits.  See Brunson,
461 S.W.2d at 683B84; Badders, 453 S.W.2d at 308B09.  

Although he argues to the contrary, we
find appellant=s  requested
relief is ultimately one for breach of contractCnot one
involving his constitutional rights. 
Moreover, appellant=s current lawsuitCbrought
four years after the State=s original suitCseeks an
entirely different remedy and, unlike the parties in Brunson and Badders,
is not so intertwined as to necessarily be part of the same controversy.





[6]  See Green
Int=l, Inc.
v. State, 877 S.W.2d 428, 434B36 (Tex.
App.CAustin 1994, writ dism=d)
(holding that even when the State intends to enact a taking, the plaintiff must
establish that the State obtained possession without the plaintiff=s consent); Hale v. Lavaca County Flood Control
Dist., 344 S.W.2d 245, 248 (Tex. Civ. App.CHouston
1961, no writ) (AArticle I, Sec. 17 of the [Texas] Constitution
contemplates that a person=s
property may be taken without compensation if such person consents thereto.@)
(emphasis added); State v. Steck Co., 236 S.W.2d 866, 869 (Tex. Civ.
App.CAustin 1951, writ ref=d) (AWhen an entity voluntarily enters into a contract and
delivers [property] to the state pursuant to that contract, the entity thereby
consents to the state=s possession of the property.@); see also Palacios Seafood, Inc. v. Piling,
Inc., 888 F.2d 1509, 1515 (5th Cir. 1989) (applying Texas law) (AConstitutional taking claims are barred if the
aggrieved party consents to the damage.@).





[7]  Arguably,
appellant also lacks standing to bring his current lawsuit.  Standing is an element of subject matter jurisdiction,
which a court can raise sua sponte. 
Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998); Tex.
Ass=n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 444B45 (Tex. 1993).  When inquiring into standing issues, we look
at the pleadings and may consider any additional evidence relevant to the
standing issues.  See Blue, 34
S.W.3d at 554B55. 
Therefore, we review the issue of standing as we would review the issue
of subject matter jurisdictionCde novo.  See
Mayhew, 964 S.W.2d at 928.

To establish standing, a person must demonstrate that he maintains a
personal stake in the controversy at hand.  Tex. Ass=n of Bus., 852 S.W.2d at 446; Hunt
v. Bass, 664 S.W.2d 323, 324 (Tex. 1984).  To establish standing in order to sue under
Article I, section 17 of the Texas Constitution, appellant was required to show
the State=s action resulted in a Ataking@ of vested property rights.  City of
Houston v. Northwood Mun. Util. Dist. No. 1, 73 S.W.3d 304, 309 (Tex. App.CHouston [1st Dist.] 2001, pet. denied).  Thus, it was appellant=s responsibility to include enough evidence in the
record to show he has an interest in the property and assets at issue.  See Ramirez. v. State, 916 S.W.2d 32,
34 (Tex. App.CHouston [1st Dist.] 1995, no pet.).  In the absence of such evidence in the
record, we will not assume appellant has any interest in the property.  See id.